**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                Plaintiff,

      - against -                      89 Cr. 99 (LLS)

MIGUEL CHAPARRO,

                Defendant.

**MEMORANDUM IN SUPPORT OF**
**MOTION FOR SENTENCE**
**REDUCTION UNDER 18 U.S.C. § 3582(c)(2)**

**TABLE OF CONTENTS**

Page

FACTS ................................................................................................................... 1

ARGUMENT ........................................................................................................ 3

I.   Mr. Chaparro Is Eligible for a Sentence Reduction under 18 U.S.C.
§ 3582(c)(2) ................................................................................................. 4

    A.   Amendment 750 Reduces Mr. Chaparro's Sentence ........................... 4

    B.   Sufficient Ambiguity Exists as to the Amount of Narcotics that Mr.
Chaparro Trafficked .......................................................................... 7

II.   The Factors under 18 U.S.C. § 3553(a) Counsel in Favor of Reducing Mr.
Chaparro's Sentence ..................................................................................... 9

    A.   18 U.S.C. § 3553(a)(1) ...................................................................... 9

    B.   18 U.S.C. § 3553(a)(2) ...................................................................... 10

    C.   18 U.S.C. § 3553(a)(3) ...................................................................... 17

    D.   18 U.S.C. § 3553(a)(4) ...................................................................... 17

    E.   18 U.S.C. § 3553(a)(5) ...................................................................... 17

    F.   18 U.S.C. § 3553(a)(6) ...................................................................... 18

    G.   18 U.S.C. § 3553(a)(7) ...................................................................... 18

III.  In the Alternative, Mr. Chaparro Should Be Granted a *Fatico* Hearing ...... 18

IV.  Conclusion .................................................................................................... 19

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

Dillon v. United States,
130 S. Ct. 2683 (2010) ................................................................................... 4

Garcia v. United States,
No. 97 Cr. 2962 (PKL), 2009 WL 484435 (S.D.N.Y. Feb. 24, 2009) .............................. 5, 9

Mock v. United States,
632 F. Supp. 2d 323 (S.D.N.Y. 2009) .................................................................. 4

Pepper v. United States,
131 S. Ct. 1229 (2011) ................................................................................. 16

Spears v. United States,
555 U.S. 261 (2009) ..................................................................................... 6

United States v. Almonte,
No. 08 Cr. 427 (SJF), 2012 WL 273138 (E.D.N.Y. Jan. 30, 2012) ........................................ 6

United States v. Diggins,
No. 03 Cr. 801 (KMW), 2009 WL 1309581 (S.D.N.Y. May 8, 2009) ................................ 17

United States v. Fatico,
579 F.2d 707 (2d Cir. 1978) ............................................................................. 18

United States v. Logan,
Nos. 09 Cr. 296 (ADS), 2012 WL 616257 (E.D.N.Y. Feb. 23, 2012) ................................ 6

United States v. Mitchell,
No. 08 Cr. 253 (ADS), 2011 WL 6251754 (E.D.N.Y. Dec. 13, 2011) ............................... 18

United States v. Patrick,
No. 99 Cr. 338 (RWS), 2008 WL 5190827 (S.D.N.Y. Dec. 8, 2008).......................... 13, 14

United States v. Price,
298 Fed. Appx. 779 (10th Cir. 2008) ............................................................... 7, 8

United States v. Regalado,
No. 96 Cr. 505 (PKL), 2008 WL 3155519 (S.D.N.Y. Aug. 6, 2008) .................................. 4

United States v. Rivera,
662 F.3d 166 (2d Cir. 2011) ............................................................................. 7

United States v. Whigham,
754 F. Supp. 2d 239 (D. Mass. 2010)................................................................... 6

United States v. Winfree,
No. 06 Cr. 34 (JFK), 2008 WL 3539508 (S.D.N.Y. Aug. 12, 2008) .................................. 4

**Statutes**

18 U.S.C. § 3553(a)(1)-(7) ................................................................................ 10

18 U.S.C. § 111 ................................................................................................ 1

18 U.S.C. § 3553(a) .................................................................................... 4, 10

18 U.S.C. § 3553(a)(1) ..................................................................................... 9

18 U.S.C. § 3553(a)(2) ........................................................................ 10, 11, 13

18 U.S.C. § 3553(a)(3) ................................................................................... 17

18 U.S.C. § 3553(a)(4) ................................................................................... 17

18 U.S.C. § 3553(a)(5) ................................................................................... 17

18 U.S.C. § 3553(a)(6) ................................................................................... 18

18 U.S.C. § 3553(a)(7) ................................................................................... 18

18 U.S.C. § 3582(c)(2) .............................................................................. 1, 3, 4

21 U.S.C. § 846 ................................................................................................ 1

**Other Authorities**

U.S.S.G. § 2D1.1(c)(4) ..................................................................................... 9

U.S.S.G. App. C, amend. 750 .......................................................................... 5

U.S.S.G. Supp. to amend. 750 ......................................................................... 5

U.S.S.G. Supp. to App. C, amend. 706 ........................................................... 5

Miguel Chaparro ("Chaparro") respectfully moves for a reduction of his sentence, pursuant to 18 U.S.C. § 3582(c)(2), based on Amendment 750 to the United States Sentencing Guidelines (the "Guidelines") applicable to crack cocaine offenses that generally reduce the base offense level for such offenses. In the alternative, Mr. Chaparro respectfully requests that this Court resolve an ambiguity from sentencing regarding the quantity of narcotics and conduct an evidentiary hearing.

## FACTS

Mr. Chaparro was born on June 21, 1965 and was raised in the Bronx. He has received a GED and acquired 23 credits from a Marist College program. Mr. Chaparro also has successfully completed numerous vocational and educational programs, including carpentry, home and building maintenance, art, business education, employment readiness and woodworking.

On April 24, 1989, Mr. Chaparro pled guilty, pursuant to a plea agreement, to counts one and thirteen in an indictment. Count one charged him with a narcotics conspiracy in violation of 21 U.S.C. § 846. Count thirteen charged him with aiding and abetting an assault on an individual who turned out to be a federal officer in violation of 18 U.S.C. § 111.

On or about September 12, 1989, the Probation Office prepared Mr. Chaparro's Presentence Report (the "PSR"). See Declaration of Harry H. Rimm, dated May 31, 2012 ("Rimm Decl."), Ex. A (September 12, 1989 Presentence Report). The PSR noted that Mr. Chaparro's organization "distributed between 100 and 1200 vials of 'crack' per day, averaging approximately 600 vials daily." Rimm Decl., Ex. A, ¶ 27. In connection with determining Mr. Chaparro's base offense level, the PSR suggested:

> Using the later figure of 600, we can estimate that this "crack" operation sold at least 4,200 vials of "crack" per week (600 x 7) and at least 184,800 vials of "crack" between April, 1988 and January, 1989 (approximately 44 weeks). According to testimony by Irizarry, 10 grams of "crack" were needed to produce 100 vials of "crack." This is confirmed by seizures made by the Drug Enforcement Administration. Using this formula we estimate that this "crack" operation was distributing approximately 420 grams of "crack" (cocaine base) weekly or 18,480 grams of "crack" from April, 1988 to January, 1989. Additionally, included in the instant offense, is 14 grams of heroin which were negotiated and a sample of heroin distributed (net weight 74.2 milligrams), which we rounded off to 15 grams of heroin. We then converted the heroin to cocaine base, as 15 grams of heroin is equivalent to .75 grams of cocaine base and added to the total. Thus, according to the drug quantity table the base offense level of 36 is appropriate for offenses involving over 500 grams of cocaine base.

Id. ¶ 60. The PSR submitted that Mr. Chaparro's total offense level was 40 (see id. ¶ 81); that his Criminal History Category was IV (see id. ¶ 98); and that "the guideline imprisonment range is 360 months to life." Id. ¶ 102.

On March 27, 1992, Mr. Chaparro's sentencing took place. In connection with a discussion about the relevant weight to be used for calculation purposes, the Court observed:

> I find that the calculation of the offense level at 36 based on the volume of crack involved should be sustained. The testimony at trial was essentially that the distribution on a daily basis varied between 100 and 1200 vials of crack, 1200 being an extremely good day, and presumably a rather rare day, but 100 being the production and distribution on even a less busy day. If the finding were 100 vials per day it would easily support the 500 grams required to justify and produce an offense level of 36, and I so find.

Rimm Decl., Ex. B, at 16-17 (March 27, 1992 Sentencing Transcript).

The Court determined that Mr. Chaparro's total offense level was 40 and that his Criminal History Category was IV, yielding an applicable Guidelines range of 360 months to life imprisonment (which was the same range as was set forth in Mr. Chaparro's plea agreement). The Court imposed a sentence of 30 years for the following reason: "sentence at bottom of range of 360 months to [life] is adequate for both individual and general deterrence." Rimm Decl., Ex. C, at 4 (March 27, 1992 Judgment).

On or about August 26, 2008, the Probation Office circulated a Supplement to the PSR examining "whether MIGUEL CHAPARRO is eligible for a reduction pursuant to § 1B1.10 and 18 U.S.C. 3582(c)(2)." Rimm Decl., Ex. D, at 1 (August 26, 2008 Supplement to PSR).  This Supplement concluded that Mr. Chaparro "is precluded from a sentencing reduction" solely because the quantity of crack "exceeds 4500 grams." Id. at 2.

On November 1, 2011, the Probation Office issued a Supplement to the PSR addressing "whether Miguel Chaparro is eligible for a reduction pursuant to § 1B1.10 and 18 USC 3582(c)(2)." Rimm Decl., Ex. E, at 1 (November 1, 2011 Supplement to PSR).  The Supplement concluded that Chaparro "is precluded from a sentencing reduction" only because the quantity of crack cocaine exceeds 8.4 kilograms (18.48 kilograms)." Id. at 2.

As of today, Mr. Chaparro has been incarcerated since on or about March 16, 1989 and has now served over 23 years and 2 months (approximately 278 months).  According to the Federal Bureau of Prisons, Chaparro's projected release date to a halfway house is in or about May 2015, and his complete release from federal custody is scheduled on or about October 23, 2015.

## ARGUMENT

Pursuant to 18 U.S.C. § 3582(c)(2), a district court is authorized to reduce a defendant's sentence "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2).  The United States Supreme Court has identified a two-step inquiry when considering a reduction in sentence: (1) is the defendant eligible for a reduction? and (2) is a reduction warranted based on the policies relevant to the defendant's

eligibility?  See Dillon v. United States, 130 S. Ct. 2683, 2691-92 (2010).

Such reductions in sentences are not infrequent, and New York courts have extensive practice in granting such motions.  See e.g., Mock v. United States, 632 F. Supp. 2d 323 (S.D.N.Y. 2009) (granting motion pursuant to 18 U.S.C. § 3582(c)(2) and reducing term from life imprisonment to 360 months, the bottom of the amended Guidelines range); United States v. Winfree, No. 06 Cr. 34 (JFK), 2008 WL 3539508 (S.D.N.Y. Aug. 12, 2008) (reduction from 78 months to 63 months, in accordance with 18 U.S.C. § 3582(c)(2), where reduction was consistent with Sentencing Commission policy statements and based on post-sentencing conduct); United States v. Regalado, No. 96 Cr. 505 (PKL), 2008 WL 3155519 (S.D.N.Y. Aug. 6, 2008) (in accordance with 18 U.S.C. § 3582(c)(2), reduction from 262 months to 210 months, the bottom of the amended Guidelines range).

The Court may reduce a sentence "after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable."   18 U.S.C.  § 3582(c)(2).   In addition to considering Mr. Chaparro's excellent record of academic, professional and personal accomplishment since his incarceration began, the rule of lenity counsels construing the ambiguity regarding the amount of narcotics trafficked in Mr. Chaparro's favor, which should result in Mr. Chaparro's immediate release.

**I.      Mr. Chaparro Is Eligible for a Sentence
        Reduction under 18 U.S.C. § 3582(c)(2)**

A.      *Amendment 750 Reduces Mr. Chaparro's Sentence*

On June 30, 2011, the United States Sentencing Commission (the "Sentencing Commission") voted unanimously to give retroactive effect -- beginning on November 1, 2011 -- to Parts A and C of Amendment 750 to the Guidelines that implement the Fair Sentencing Act of 2010 (the "FSA"), Pub. L. 111-220, 124 Stat. 2372.  Amendment 750 "amends §1B1.10" of the

Guidelines.  U.S.S.G. Supp. to amend. 750 (Synopsis of Amendment).  The purpose of Parts A and C to Amendment 750 is to account for the changes in the statutory penalties made by the FSA for offenses involving crack cocaine.  See U.S.S.G. App. C, amend. 750 (Reason for Amendment).  The FSA specified in its statutory text that its purpose was to "restore fairness to Federal cocaine sentencing" and provide "cocaine sentencing disparity reduction."  U.S.S.G. Supp. to amend. 750 (Synopsis of Amendment), citing 124 Stat. at 2372.

Most relevant to this case is Part A of Amendment 750, which increased the quantities of crack cocaine required to trigger mandatory minimum sentences and decreased the base offense levels for all crack cocaine sentences based on the Drug Quantity Table in 2D1.1.  The Sentencing Commission enacted amendments to the Guidelines -- related to crack cocaine -- in order to address the "problems associated with the 100-to-1 drug quantity ratio" between powder and crack cocaine.  See U.S.S.G. Supp. to App. C, amend. 706.  Noting its "consistently held position that the 100-to-1 drug quantity ratio significantly undermines various congressional objective set forth in the Sentencing Reform Act and elsewhere," the Sentencing Commission found that "the problems associated with the 100-to-1 drug quantity ratio are so urgent and compelling."  Id.  The Sentencing Commission emphasized that courts should consider the articulated policy statement when evaluating the merits of a reduction in sentence, namely that the amendments to the crack cocaine Guidelines reflect an effort to rectify injustices committed under the prior disparity between powdered cocaine and crack cocaine sentences.  See U.S.S.G. Supp. to amend. 750 (Synopsis of Amendment), citing 124 Stat. at 2372.

When calculating if a defendant's sentence has been subsequently reduced, the court compares the Guidelines from the time of the original sentencing with the Guidelines at the time of the requested reduction.  See Garcia v. United States, No. 97 Cr. 2962 (PKL), 2009 WL

484435, at *4 (S.D.N.Y. Feb. 24, 2009) (comparing the 1992 Sentencing Guidelines, the date of conviction, with the 2009 Sentencing Guidelines, the date of reduction in sentence). As noted above, the only specific finding that this Court made at Mr. Chaparro's sentencing as to the amount of narcotics trafficked related to 500 grams. In light of the rule of lenity discussed below, it is permissible to use the Court's reference to 500 grams as the lodestar for resentencing purposes, rendering Mr. Chaparro eligible for a reduction because 500 grams is within the quantity range for a base offense level of 32 under the current Guidelines and lower than Mr. Chaparro's base offense level of 36 which was found at sentencing. See United States v. Logan, Nos. 09 Cr. 296 (ADS), 2012 WL 616257, at *21 (E.D.N.Y. Feb. 23, 2012) (granting motion under § 3582(c) and reducing defendant's sentence from sixty-three months to sixty months); see also United States v. Almonte, No. 08–CR–427 (SJF), 2012 WL 273138, at *5 (E.D.N.Y. Jan. 30, 2012) (granting motion for sentence reduction under § 3582(c)(2) and reducing defendant's imprisonment term from sixty-two months to fifty-seven months).

In addition, deviation from the Guidelines on policy grounds is permitted, as "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines." Spears  v. United States, 555 U.S. 261, 265-66 (2009). A court may substitute the congressional powder/crack ratio with a ratio of its own on the basis of such policy considerations. See id.; see also United States v. Whigham, 754 F. Supp. 2d 239, 246 (D. Mass. 2010) ("I will apply a 1:1 ratio for all crack cocaine sentencings").

In light of Amendment 750, and considering the aforementioned discrepancies that the Sentencing Commission has found with regard to crack cocaine sentencing, this Court may alternatively use a different powder/crack ratio and find that Mr. Chaparro's unique set of circumstances and the facts of his case warrant a lower sentencing level.

B.     *Sufficient Ambiguity Exists as to the Amount*
       *of Narcotics that Mr. Chaparro Trafficked*

The Second Circuit has recently stated that "the rule of lenity . . . applies to [the] interpretation of the Guidelines [and] requires ambiguities like the one at issue here to be resolved in the defendant's favor." United States v. Rivera, 662 F.3d 166, 186 (2d Cir. 2011) (J. Katzmann, concurring) (citation omitted). In the present action, sufficient ambiguity exists as to the quantity of narcotics, allowing for application of the rule of lenity in favor of Mr. Chaparro.

At sentencing, this Court stated at one point: "If the finding were 100 vials per day it would easily support the 500 grams required to justify and produce an offense level of 36, and I so find." Rimm Decl., Ex. B, at 17. However, the November 2011 Supplement interpreted this Court's statements at sentencing to conclude that Mr. Chaparro allegedly trafficked 18.48 kilograms of crack cocaine, a quantity based on the 600 vial average that was used in the PSR but not by this Court. See Rimm Decl., Ex. E. Indeed, this Court at sentencing never found that Mr. Chaparro had actually trafficked 600 vials per day, or 18.48 kilograms in total. Again, as highlighted above, the only determination that the Court made at sentencing was that the amount was at least 500 grams.

At least one United States Court of Appeals has applied the rule of lenity in a nearly identical factual situation in favor of finding a lower amount of narcotics when the trial court did not make a conclusive finding as to the quantity of narcotics trafficked. The Tenth Circuit recently found that a defendant, whose sentencing judge did not make a dispositive and determinate finding as to the amount of drugs but did acknowledge that the amount trafficked met the minimum amount of 500 grams, could only be sentenced for the 500 grams as per Amendment 706. See United States v. Price, 298 Fed. Appx. 779 (10th Cir. 2008).

In Price, "[a]lthough the Presentence Investigation Report states that Price distributed

seven kilograms of cocaine base, the finding made at his 1992 sentencing was only that Price had distributed in excess of 500 grams of crack." Id. at 781.   Moreover, statements by the government and the trial court indicated that -- though there was evidence that might support a finding in excess of seven kilograms -- the evidence only reliably showed that the defendant trafficked in excess of 500 grams.[1]

The trial court's language from Price is similar to the statements at Mr. Chaparro's sentencing hearing, primarily reflecting the state of the law at that time which only required a finding in excess of 500 grams.   Thus, establishing an exact amount was not necessary.   The Tenth Circuit, however, found that, in the face of an indeterminate finding during sentencing, the court was bound only to use the 500 grams baseline that the defendant had assuredly trafficked. See id. at 781-82.

Pursuant to the Drug Quantity Table, as revised by Amendment 750, offenses involving 500 grams of cocaine base are assigned a base offense level of thirty-two, which is four levels lower than the base offense level of thirty-six that Mr. Chaparro received (see U.S.S.G. § 2D1.1(c)(4)), and Mr. Chaparro's total offense level would be a level thirty-six, not a level forty. The recommended range of imprisonment for a level 36 is 262 to 327 months.   Again, Mr. Chaparro has already served approximatley 278 months.

Since a specific determination was not necessary under the Guidelines at the time of Mr. Chaparro's sentencing, this Court essentially concluded that Mr. Chaparro trafficked more than

---

[1] The government in Price stated: "Well it's not important Your Honor find that there was seven kilos, only that you find that there was evidence in the record of over 500 grams and that is a conservative viewpoint, but that is the view point the government is adopting in this case, Judge.  I'm not saying there wasn't evidence of seven kilos, we think that is also satisfied here if you multiply it out, but certainly from Ward Price's own mouth on two occasions, we have evidence of over 500 grams." Id.   The Court then stated: "The transcript at trial clearly demonstrates, and the court believes that it is reliable that the amount exceeded the 500 grams, and therefore the court so finds that it did in fact so exceed the 500 grams." Id.

- 8 -

500 grams.  However, it is the lack of specificity concerning the actual drug quantity that points to invocation of the rule of lenity in connection with Mr. Chaparro's instant motion.

## II.     The Factors under 18 U.S.C. § 3553(a) Counsel in Favor of Reducing Mr. Chaparro's Sentence

When evaluating the factors under 18 U.S.C. § 3553(a), courts are directed to consider a broad range of information, including the nature and circumstances of the offense and the history and characteristics of the defendant.  See 18 U.S.C. § 3553(a)(1)-(a)(7).  In such a situation, the court may reduce the sentence of imprisonment given to a defendant.  See Garcia, 2009 WL 484435, at *5 (reduction from life imprisonment to 292 months, the bottom of the Guidelines range, where defendant raised "no apparent considerations regarding public safety; he has received no disciplinary sanctions; he has attained his GED and completed a 40-hour drug education program; and he has received average to above-average work performance evaluations for his institutional work assignments").  Upon analysis, all seven factors under 18 U.S.C. § 3553(a) counsel in favor of reducing Mr. Chaparro's sentence.

### A.     _18 U.S.C. § 3553(a)(1)_

In connection with 18 U.S.C. § 3553(a)(1), the Court is to consider the "nature and circumstances of the offense and the history and characteristics of the defendant."  Mr. Chaparro's offenses have been described (see supra at 1), and Mr. Chaparro has spent twenty-three years in prison after pleading guilty.  Feeling a great deal of remorse for past actions, Mr. Chaparro has used his time in federal custody to better himself.  See Rimm Decl., Ex. F (Miguel Chaparro Letter); see also Rimm Decl., Exs. G-J (Chaparro's Course and Program Certificates). Mr. Chaparro continues to look forward to returning to society and being a contributing member of his community.

B.   *18 U.S.C. § 3553(a)(2)*

Mr. Chaparro was sentenced to a term of thirty years and has now been in prison for the past twenty-three years.  As detailed below, Mr. Chaparro has recognized the errors of his past and has taken significant steps to prepare for life following his release and to express remorse for his actions.

With respect to 18 U.S.C. § 3553(a)(2)(A), the time Mr. Chaparro has spent in prison has fostered in him the utmost respect for adherence to the law.  Mr. Chaparro has integrated himself within the institutional framework at the various penitentiaries where he has served time. Significantly, he has demonstrated respect for authority and the law, and the Institutional Adjustment section to his September 2011 Progress Report notes: "He receives good work evaluations and requires little or no supervision to complete tasks as instructed."  Rimm Decl., Ex. V, at 4 (September 2011 Progress Report).  Clearly, the prison officials who have been overseeing Mr. Chaparro's detention are confident as to his ability to maintain his good behavior and respect for the law.

Moreover, the time that Mr. Chaparro has already served satisfies the need for adequate deterrence under 18 U.S.C. § 3553(a)(2)(B).  As noted, the Sentencing Commission's decision to make Amendment 750 retroactive was made, in part, to eliminate the 100-to-1 sentencing disparity between crack and cocaine offenses.  Mr. Chaparro has spent the past twenty-three years in prison for the trafficking of crack.  If Mr. Chaparro's instant motion for a reduction of sentence is granted, he will have effectively served a twenty-three year sentence, which would unequivocally send a strong and effective message of individual and general deterrence.

Also, as discussed in greater detail below, Mr. Chaparro has taken numerous rehabilitation classes and seminars on reducing narcotics dependency.  See Rimm Decl., Ex. G. More importantly, Mr. Chaparro has actually taken the lead in many of these classes and has

mentored other inmates struggling with their own addictions.  As such, the sentence has had both a deterrent and rehabilitative impact on both Mr. Chaparro's behavior, as he has maintained himself to be a model inmate to the other inmates whom Mr. Chaparro has taught and mentored during his twenty-three years in prison.

Finally, beyond Mr. Chaparro's excellent work record while incarcerated, we understand that Mr. Chaparro was recently diagnosed with coronary heart disease that has significantly diminished his physical stamina; that he was recently hospitalized for almost a week in connection with the heart condition; and that since his release from the hospital, Mr. Chaparro has experienced diminished energy and finds himself incapable of sustaining strenuous activity over a long period of time.  See Rimm Decl., Ex. K (Nov. 2011 Medical Records).  Mr. Chaparro recognizes that, though he is not elderly, he is also no longer young, and consequently, understands that he must create a new safe and productive life for himself that will allow him reasonably to maintain his physical health.

Additionally, the sentence protects the public from further crimes by Mr. Chaparro, meeting the factor under 18 U.S.C. § 3553(a)(2)(C).  The twenty-three years that Mr. Chaparro has spent in prison have successfully deterred him from any future criminal conduct (see Rimm Decl., Ex. F), and a reduction of sentence would still protect the public.

Mr. Chaparro's rehabilitation is further proven by the fact that he was moved from U.S.P. Canaan, a high security prison, to U.S.P. Atlanta, a medium security prison earlier this year. Moreover, Mr. Chaparro has no gang affiliation despite the strong influence many gangs have had in the various federal prisons at which Mr. Chaparro has been an inmate.  Simply put, Mr. Chaparro has demonstrated sincere remorse for his prior criminal conduct and has taken many steps towards preparing himself for his eventual release.

In addition, upon release, Mr. Chaparro will have a wonderful support network, both emotional and financial, that will aid his transition back into society, and he will be able to rely on his strong and tight-knit family for any financial and emotional assistance that he may need following his release.  For example, Ramona Chaparro, Mr. Chaparro's mother, states that she has "seen him change from an irresponsible young adult to a man with a thirst for success, and who is willing to make all changes possible to become a productive contributing member of society."  See Rimm Decl., Ex. L (Ramona Chaparro Letter).  She also reaffirms that she is "willing to help and support my son Michael in any way that I can when he comes home."  Id.

Mr. Chaparro's sister, Danette Chaparro, a Behavior Detection Officer with the Department of Homeland Security since 2002, notes that Mr. Chaparro is a "changed man, very different from the young man that was incarcerated almost (23 years ago) who had no goals or direction in his life."  See Rimm Decl., Ex. M (Danette Chaparro Letter).  She states both she and her "entire family will do everything we can to support my brothers (sic) transition back into society, both financially and emotionally."  Id.

Many other members of Mr. Chaparro's family have written letters of encouragement and support as well:

**his sister Jessica Soto: "He will have the full support of his family upon his return.  We will do everything we can to help him get back on his feet."  See Rimm Decl., Ex. N (Jessica Soto Letter);

**his sister Cynthia Rivera: "I am more than willing to help him with any financial resources that he may need.  I will also be there for him with regard to any spiritual and emotional needs that may arise."  See Rimm Decl., Ex. O (Cynthia Rivera Letter);

**his brother Christopher Mercado: "I truly hope and pray that Michael will be coming

home soon. When that time comes, I can and will help him in any way possible, financial or otherwise." See Rimm Decl., Ex. P (Christopher Mercado Letter);

**his niece Delilah Leon: "I have seen him change throughout the years into a responsible adult. He serves as a good role model to others who have chosen the wrong path in life but end up correcting their behavior and making the lifestyle changes necessary to becoming a productive member of society. . . . I will provide financial and emotional support needed to him adjust back into society." See Rimm Decl., Ex. Q (Delilah Leon Letter);

**his aunt Linda Rivera: "I understand that he may require financial and emotional support. I am here for him and always will be. We are a close knit family and he needs to be with us." See Rimm Decl., Ex. R (Linda Rivera Letter);

**his brother-in-law Michael Soto: "We are his family will (sic) help him in any way we can, whether it be financial or emotional support." See Rimm Decl., Ex. S (Michael Soto Letter); and

**his brother-in-law Teofilo Leon: "Michael has my fullest support and financial need when he gets released from Federal confinement." See Rimm Decl., Ex. T, (Teofilo Leon Letter).

In connection with the factor under 18 U.S.C. § 3553(a)(2)(D), evidence of post-sentencing rehabilitation may be considered. See United States v. Patrick, No. 99 Cr. 338 (RWS), 2008 WL 5190827, at *2 (S.D.N.Y. Dec. 8, 2008) (Sweet, J.) (reducing sentence under § 3582(c)(2) from 235 months to 188 months, the bottom of the amended Guidelines range, where defendant had received his GED, successfully participated in training courses and completed drug rehabilitation program).

Here, the Court should consider and recognize the vast number of positive steps Mr.

Chaparro has taken towards rehabilitation during his incarceration.  Over the past twenty-three years, Mr. Chaparro has obtained numerous certificates for drug rehabilitation, professional development and educational programs that, without question, demonstrate that he has not only furthered his personal development, but also has prepared for a seamless integration back into the community upon release.  See Rimm Decl., Exs. G-J.  Indeed, Mr. Chaparro has attempted to reform and rehabilitate himself in a manner that will aid his re-entry into society.

Mr. Chaparro's achievements during imprisonment are undeniably admirable.  Mr. Chaparro has taken a variety of education classes and professional courses, all of which indicate Mr. Chaparro's willingness to rehabilitate and prepare for his eventual life after prison.  See Rimm Decl., Ex. I.  Mr. Chaparro started and completed his GED studies.  See Rimm Decl., Ex. V, at 5.  He also has taken an English proficiency course early on in his time in prison.  See id. at 3.  In a similar situation, this Court found defendant's academic achievement persuasive and granted a sentence reduction.  See Patrick, 2008 WL 5190827, at *2 (sentence reduced to bottom of range upon rigorous and high academic performance in conjunction with sustained attendance in drug rehabilitation programs).

In total, Mr. Chaparro has taken almost 1,000 hours of specialized courses that have aided his general rehabilitation and prepared him for life after release.  See Rimm Decl., Ex. V, at 5.  Over 350 of these hours deal with computer software and computer skills development, such as computer graphic design.  See id.  Through these courses, Mr. Chaparro has gained a strong proficiency in Microsoft Windows and many other graphic design software applications.  Another 250 hours were spent in courses dealing with personal mental health, growth and development, such as anger management therapy and parenting.  See id.  Moreover, Mr. Chaparro has taken over 200 hours in vocational training, including electric and clean-room

soldering courses.  See id.

In total, Mr. Chaparro has taken over fifty courses, many of which were year-long courses, that have enabled his academic, professional, and social growth.  See id.  At his current facility, the U.S.P. Atlanta only offers courses that Mr. Chaparro has already taken at his prior facilities.  Mr. Chaparro's continued stay at this facility, where he has been employed in the Recreation Department since his arrival in January 2012, will not allow him fully to pursue all of his academic and professional interests.

Principally, Mr. Chaparro has taken serious steps towards addressing his prior history with narcotics and has taken and completed a variety of courses on drug rehabilitation, including co-facilitating a year-long course on drug rehabilitation.  See id. at 1-2.  In total, Mr. Chaparro has taken over 200 weeks of drug rehabilitation courses.  See id. at 5-6.

On January 19, 2007, Mr. Chaparro completed a one year non-residential program at U.S.P. Coleman for drug rehabilitation.  See Rimm Decl., Ex. V, at 1.  His supervisor during the program, Ms. Tabatha Anderson, who is a drug abuse treatment specialist, noted in a persuasive note that Mr. Chaparro is a:

> co-facilitator . . . [and his] participation in the group is excellent and he maintains a good attitude regarding treatment and his incarceration.  From the beginning of treatment, after letting down his guards (sic), Mr. Chaparro accepted responsibility for his past and openly accepted feedback from the group.  He was very ambitious and he engaged in the treatment process.  On several occasions, he volunteered his personal time to assist others in the group.  He has become a natural leader in the group settings.

Id.

Mr. Chaparro has completed an additional drug education course in 2007 and another drug treatment course in 2006.  See Rimm Decl., Ex. G.  He also has completed the non-residential drug-treatment program at U.S.P. Canaan, taken Stress and Anger Management

classes and participated in a victim impact group.  <u>See</u> Rimm Decl., Ex. J.

Beyond drug rehabilitation, Mr. Chaparro has completed vocational courses such as "Developing Skills for a Business," "Basic Introduction to Accounting," "Introduction to World of Business" and "Accounting for a Small Business."  <u>See</u> Rimm Decl., Ex. V, at 5.  He took these courses with the expressed purpose of building the necessary skills to be able to gain employment after prison and be successful.  He also has successfully completed numerous courses in emergency management from the Federal Emergency Management Agency ("FEMA") that have provided him the necessary training to handle himself calmly and intelligently during moments of stress and difficulty.  <u>See</u> Rimm Decl., Ex. H.  Mr. Chaparro was inspired to take these courses after witnessing the devastation of the Gulf region during Hurricane Katrina.  He decided to take these emergency response courses in order to be able to to assist local law enforcement officials in preparing and responding to a natural disaster.  Mr. Chaparro took these correspondence courses, which were in no way related to any other offered prison courses, on his own volition and paid the fees personally with no external assistance.  He also has successfully completed coursework in graphic design and personal fitness, becoming a certified physical trainer.  <u>See</u> Rimm Decl., Ex. H.

At U.S.P. Canaan, Mr. Chaparro was considered fully employable in an institutional setting.  Mr. Chaparro maintained vigorous employment as a unit orderly and worked approximately 30 to 35 hours a week.  <u>See</u> Rimm Decl., Ex. V, at 3.  He was responsible for the general maintenance and cleaning of the housing unit.  <u>See</u> <u>id.</u> at 5.  He received above average to outstanding ratings from his supervisor, who described Mr. Chaparro as "punctual, dependable, and thorough in his duties."  <u>Id.</u>

Moreover, Mr. Chaparro is not considered a management problem at his penitentiary, and

evidence of good behavior can be influential. See United States v. Diggins, No. 03 Cr. 801 (KMW), 2009 WL 1309581, at *4 (S.D.N.Y. May 8, 2009) (Wood, J.) (reduction from 30 months to 24 months for defendant where post-sentencing conduct included "very encouraging behavior"). Mr. Chaparro also maintains close family and community ties, resulting in an exceptionally strong support system upon release.

Finally, not only will Mr. Chaparro be able seamlessly to integrate back into society, but he will also be a contributing member. Mr. Chaparro has had conversations with possible employers in the New York area and has actually secured a written commitment for employment in food production upon his release. See Rimm Decl., Ex. U (Yoel Weiss Letter of Employment).

C.    *18 U.S.C. § 3553(a)(3)*

Under 18 U.S.C. § 3553(a)(3), a court should consider the kinds of sentences available. Mr. Chaparro's sentence of imprisonment is quite customary for drug offenses, and his sentence has been a lengthy one.

D.    *18 U.S.C. § 3553(a)(4)*

18 U.S.C. § 3553(a)(4) requires a court to consider the category of offenses committed as set forth in the Guidelines. Mr. Chaparro's reduced sentence would still be based on the drug quantity chart in the Guidelines.

E.    *18 U.S.C. § 3553(a)(5)*

In connection with 18 U.S.C. § 3553(a)(5), a court should consider any pertinent policy statements issued by the Sentencing Commission. Here, as stated above, the Sentencing Commission has taken significant steps to eliminate the drastic disparity of sentences that have historically defined crack cocaine offenses as compared to offenses involving cocaine. In fact, Amendment 750 allows for retroactive applicability to defendants such as Mr. Chaparro, who

was unfairly punished under an old system and outdated drug quantity table.

      F.     *18 U.S.C. § 3553(a)(6)*

A court should consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In this case, we understand that all of Mr. Chaparro's co-defendants have already been released from prison. None is any longer even under supervision in connection with this case. Mr. Chaparro is the lone remaining defendant still in prison, during which time he has dedicated himself to bettering himself for his eventual release.

      G.     *18 U.S.C. § 3553(a)(7)*

Under 18 U.S.C. § 3553(a)(7), a court should consider the need to provide restitution of the offense. This particular consideration is not relevant herein.

**III.    In the Alternative, Mr. Chaparro Should Be Granted a *Fatico* Hearing**

Where there is a critical unresolved factual issue concerning the quantity of narcotics resulting in possible adverse sentencing ramifications, courts have established the need for a hearing to permit parties to present additional evidence. See generally United States v. Fatico, 579 F.2d 707 (2d Cir. 1978). See also United States v. Mitchell, No. 08 Cr. 253 (ADS), 2011 WL 6251754, at *2 (E.D.N.Y. Dec. 13, 2011) (finding defendant entitled to evidentiary hearing on drug quantity to determine eligibility for sentence reduction). Mr. Chaparro requested at his sentencing the opportunity to submit additional testimony and facts into the record, but the Court denied the request. See Rimm Decl., Ex. B, at 25.

In the alternative, Mr. Chaparro reapplies for a Fatico hearing in the event that the Court denies a reduction in his sentence. Mr. Chaparro believes that the consideration of additional factors which were not addressed at his original sentencing would lower the amount of narcotics that were trafficked during the course of the conspiracy. Considering the ambiguity at

sentencing, the overall record in this case and the related cases involving Mr. Chaparro's co-defendants who have gone to trial as to the amount of narcotics trafficked, at minimum, a <u>Fatico</u> hearing would aid in completing a final determination.

**IV.    <u>Conclusion</u>**

For the reasons set forth herein, Mr. Chaparro, who will turn 47 years old in June 2012 and who has already served more than twenty-three years in connection with this case, respectfully requests that his motion for a reduction in sentence be granted and that he be released forthwith.

Dated:    New York, New York
         May 31, 2012

Respectfully submitted,

**REED SMITH LLP**

By: _____
    Harry H. Rimm
    Aditya G. Nagarajan

599 Lexington Avenue
New York, New York 10022
Telephone: (212) 521-5400
Facsimile: (212) 521-5450

*Attorneys for Defendant Miguel Chaparro*